**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VETERAN INNOVATIVE PRODUCTS LLC, ARROWDS, LLC, AND MATTHEW FUTTERE** | § | |
| **Plaintiffs,** | § | Case No. 5:25-cv-1089 |
| | § | |
| **v.** | § | |
| | § | |
| **BOWMAR ARCHERY, LLC, BOWMAR MEDIA, LLC, JOSHUA BOWMAR, AND DAVID HOUSER** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Veteran Innovative Products LLC, dba VIP Archery ("VIP Archery"), Arrowds, LLC, and Matthew Futtere file this Complaint against Bowmar Archery, LLC; Bowmar Media, LLC; Joshua Bowmar; and David Houser, and in support thereof, allege as follows:

## I. NATURE AND BASIS OF ACTION

1. This is a civil action for Defendants' willful patent infringement of U.S. Pat. No. 8,043,177, trademark infringement of Reg. No. 6,951,373, trademark infringement of the FLEXCUT trademark, fraud, breach of non-disclosure agreement, and intentional infliction of emotional distress. This action arises under 35 U.S.C. § 100, *et seq.*, 15 U.S.C. § 1051 *et seq.*, and the common law of Texas.

2. Plaintiffs seek, among other things, permanent injunctive relief, monetary damages, punitive damages, and recovery of Plaintiffs' costs and reasonable attorneys' fees incurred in connection with this action.

## II. PARTIES

3. Plaintiff VIP Archery is a Georgia limited liability company with its principal place of business located at 114 E. Austin Street, Fredericksburg, Texas 78624.

4. Arrowds, LLC is a Texas limited liability company with its principal place of business located at 114 E. Austin Street, Fredericksburg, Texas 78624.

5. Plaintiff Matthew Futtere is a Texas resident living in Fredericksburg, Texas 78624 and is the owner/manager of VIP Archery and Arrowds, LLC.

6. Defendant Bowmar Archery, LLC is a limited liability company formed under the laws of Iowa with a principal place of business at 8940 NE 29th Street, Ankeny, Iowa 50021. Bowmar Archery may be served through United States Corporation Agents, Inc., 8421 University Boulevard, Suite M, Des Moines, IA 50325. **Citation is requested at this time. Service will be via private process service.**

7. Defendant Bowmar Media LLC is a limited liability company formed under the laws of Iowa with a principal place of business at 8940 NE 29th Street, Ankeny, Iowa 50021. Bowmar Media may be served through Registered Agents Inc., 6701 Corporate Drive, Suite R, Johnson, IA 5013. **Citation is requested at this time. Service will be via private process service.**

8. Defendant Joshua Bowmar is a resident of Iowa and is the owner and CEO of Bowmar Archery LLC and Bowmar Media LLC. Mr. Bowmar may be served at 8940 NE 29th Street, Ankeny, Iowa 50021. **Citation is requested at this time. Service will be via private process service.**

9. Defendant David Houser is a resident of Pennsylvania and is an owner and manager of Bowmar Archery, LLC. Mr. Houser may be served 11523 RTE 954 HWY North, Creekside, PA 15732. **Citation is requested at this time. Service will be via private process service.**

## III. JURISDICTION AND VENUE

10. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*., false advertising under 15 U.S.C. § 1125, unfair competition, fraud, and intentional infliction of emotional distress. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

11. This Court has personal jurisdiction over Bowmar Archery and Bowmar Media as the entities regularly conduct business in Texas and have committed acts of patent infringement, trademark infringement, and other torts in this Judicial District, the State of Texas, and elsewhere in the United States. Bowmar Archery has multiple dealers/distributors in the State of Texas selling the infringing product including in this Judicial District.

12. This Court has personal jurisdiction over Joshua Bowmar as he has committed torts in whole or in part in Texas by directing and controlling the activities of Bowmar Archery and Bowmar Media which sold, offered for sale, and profited off of the sale of an infringing product in Texas. Defendant Bowmar further directed phone calls into Texas resulting in tortious conduct and directed false advertising into Texas.

13. This Court has personal jurisdiction over David Houser as he has committed a tort in whole or in part in Texas by directing and controlling the activities of Bowmar Archery which sold, offered for sale, and profited off of infringing products in Texas.

14. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because, among other things, Defendants committed the willful acts of patent and trademark infringement, and other willful acts complained off relating to fraud and intentional infliction of emotional distress in this Judicial District.

# IV. FACTUAL ALLEGATIONS

## A. VIP Archery and the ’177 Patent

15. Matthew Futtere is an avid outdoorsman, inventor, and a veteran of the United States Navy. He has always had a particular interest in bowhunting, and, in the early 2000s, desired to improve the existing broadhead technology. What initially started as a hobby, grew into a business, with Mr. Futtere founding multiple companies including VIP Archery with his wife Cindy. Since 2004, Mr. Futtere is an inventor on at least nine issued U.S. patents related to bowhunting. VIP Archery currently offers numerous archery products including several different broadheads embodying Futtere’s patents.

16. On October 25, 2011, the United Stared Patent and Trademark Office duly and legally issued U.S. Patent No. 8,043,177 (“’177 Patent”) entitled “Arrowhead Having Collapsible and Outwardly Biased Blades.” A true and correct copy of the ’177 Patent is attached as Exhibit A. The ‘177 Patent was invented by Edward Flanagan and is directed to broadheads with collapsible blade members that collapse to permit easier penetration of bone, or bypassing bone, but then outwardly bias to increase the amount of flesh cut by the blade members after passing through the bone. Figures 3 and 4 of the ’177 Patent, reproduced below, are representative of the invention. The broadhead features two blade members, interconnected at the forward end of the ferrule, having a retracted and extended position. A biasing member, a spring in this embodiment, biases the blades from the retracted position to the extended position.




17. In other embodiments, each blade member is individually controlled by a biasing element allowing for one blade member to collapse while the other blade member remains extended. For example, if the broadhead in the embodiment shown in FIGS 1 and 2 passes by a rib bone, the blade member hitting the bone will collapse while the other blade remains extended. As the blade collapses, it evades the bone, allowing the other blade member to continue cutting flesh in the extended position.

18. On April 1, 2019, VIP Archery acquired all right, title, and interest in the ’177 Patent from Mr. Flanagan.[1] VIP Archery holds the exclusive right to take all actions necessary to

[1] A promissory note secured VIP Archery’s purchase of the ’177 Patent. The promissory note was paid off on or around October 2, 2023. After the promissory note was paid off, Mr. Flanagan “assigned” the ’177 Patent to Mr. Futtere individually on January 23, 2024. The January 23, 2024 “assignment” was incorrectly styled as the April 1, 2019 assignment already conveyed title to VIP Archery. Instead, the January 23, 2024 “assignment” should have been styled as a release of security interest and should be construed as such.

enforce its rights to ’177 Patent, including the filing of this patent infringement lawsuit, recover all damages for past, present, and future infringement, and to seek injunctive relief as appropriate under the law.

19. The Ranger broadhead, manufactured and sold by VIP Archery embodies the ’177 Patent. VIP Archery have at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the ’177 Patent.

20. VIP Archery advertises the Ranger broadhead as featuring its “FLEXCUT” technology. FLEXCUT refers to the ability of the blade members to retract as it moves through or passes by bone and then to an extended position after it passes the bone. The FLEXCUT technology was well known as VIP Archery introduced the Ranger broadhead at the Archery Trade Association in January 2022. After its launch, multiple influencers in the archery industry reviewed and discussed the Ranger broadhead. Arrowds, LLC owns Federal Trademark Reg. No. 6,951,373 for FLEXCUT in Class 28 for hunting arrow points. A true and correct copy of the ’373 Registration is attached as Exhibit B.VIP Archery uses the trademark FLEXCUT with permission from Arrowds, LLC.

21. In 2019, Mr. Futtere was diagnosed with advanced bladder cancer which resulted in a significant decline in health as he faced multiple surgeries and extensive treatment. During this time period, VIP Archery suffered financial setbacks due to mismanagement by Mr. Futtere’s former business partners as Mr. Futtere was focusing on treatment. As of 2022, Mr. Futtere is the sole owner of VIP Archery and Arrowds.

### B. Bowmar Archery’s unfounded infringement accusations against VIP Archery led to negotiations to purchase Plaintiff’s assets including the ’177 Patent.

22. Bowmar Archery, LLC sells broadheads and is a direct competitor to VIP Archery. Mr. Bowmar and Mr. Houser are owners, officers, and direct the actions of VIP Archery to include advertising, manufacturing, and development that resulted in the complained of conduct.

23. On April 11, 2022, Bowmar Archery filed a patent infringement lawsuit against VIP Archery concerning United States Patent No. 10,295,316 ("Wukie Patent") in the Western District of Texas, San Antonio Division, 1:22-cv-00346-RP. The complaint asserted three VIP Archery broadheads, including the Ranger, infringed the Wukie Patent. VIP Archery filed a motion to dismiss for failure to state a claim which was granted on January 18, 2023. On April 21, 2023 Bowmar Archery filed a stipulated dismissal with prejudice.

24. During the pendency of Bowmar Archery's lawsuit against VIP Archery, Mr. Bowmar knew a broadhead he was developing, later called the "Beast" broadhead, would infringe the '177 Patent if launched into the market.

25. After the motion to dismiss was granted, Mr. Bowmar called Mr. Futtere directly, without the presence of his or Mr. Futtere's counsel, to discuss the possibility of Bowmar Archery acquiring all or some portion of VIP Archery to include the '177 Patent. Mr. Bowmar knew of VIP Archery, knew Mr. Futtere was a prolific inventor, knew about the products and branding of VIP Archery, and knew of Mr. Futtere's significant contribution to archery. Based on information and belief, Mr. Bowmar knew about the FLEXCUT trademark and the bone-evading nature of the Ranger broadhead.

26. On March 4, 2023, Mr. Bowmar signed a nondisclosure agreement with VIP Archery as Mr. Bowmar and VIP Archery were "considering a possible business transaction." As part of the NDA, both agreed to not disclose confidential information to third parties. Confidential information included financial information such as VIP Archery's sales data and debts as well as the substantive offers during the negotiations.

27. From the very beginning of the negotiations, Mr. Bowmar was expressly aware of Mr. Futtere's cancer, his overall deteriorating health, and the financial difficulties VIP Archery was facing.

28. On June 14, 2023, Mr. Bowmar and Mr. Futtere conducted a phone call to further discuss the potential purchase and came to an oral agreement for a comprehensive asset purchase agreement. Folow up phone calls, which included Mr. Houser and each parties' counsel, conducted at least one teleconference to finalize the asset purchase agreement. Based on information and belief, Mr. Bowmar, Mr. Houser, and Bowmar Archery never intended to follow through with the June 14 agreement.

29. Despite knowing the "Beast" infringed the '177 Patent, and without notifying Plaintiffs first, Bowmar Archery introduced the "Beast" broadhead in August 2023. Based on information and belief, Bowmar Archery began selling the Beast broadhead in August 2023.

30. The Beast broadhead has a retracted blade position and an extended position as seen in the photographs below. The Beast broadhead includes 1) a ferrule having a rear end configured for attachment to an arrow; 2) two blade members with each having a first (forward) end pivotally interconnected to the ferrule body; 3) a retracted position and an extended position of each blade member as related to the second (rearward) end of each blade member and the ferrule body; and 4) a biasing member that biases the blades from the retracted position to the extended position.






31. As seen in the cross sections below, each blade member is held in the retracted position with the blade members positioned in a blade lock recess mechanism. Once released from the blade lock recess mechanism, the blades are pivoted to the extended position by spring (biasing member). The spring is the only element operable to hold the blade member in the extended position.



32. Bowmar Archery states the name Beast is an acronym for "Bone Evading Advanced Spring Technology." Mr. Bowmar alleges through multiple social media posts, including on YouTube and Instagram, that he "invented" the technology featured in the Beast broadhead and specifically advertises "our patented Bone Avoiding Technology lets the blades intelligently flex back ONLY on hard bone" and that the bone avoiding technology "isn't just evolution; it's a revolution in broadhead design." Mr. Bowmar, in discussing when the Beast broadhead comes up to ribs in an animal, states that "every other broadhead on the market . . . has to cut through the rib or break those ribs in order for the broadhead to get through the ribs." This statement was published on July 7, 2024 when Mr. Bowmar knew about the Ranger broadhead, that embodied the '177 Patent, could also pass by rib bone without cutting or breaking the rib. These statements are false as Mr. Bowmar did not invent the technology; Mr. Flanagan did as identified in the '177 Patent. At the time Defendants made these statements, Defendants knew they were false, knew VIP Archery had already marketed products featuring bone evading technology, and knew VIP Archery used the trademark FLEXCUT in association with its Ranger broadhead.

Defendants acted as if Defendants had completed the asset purchase agreement with Plaintiffs; but, at the time of the release, Defendants continued to push back against Plaintiffs in the negotiation.

33. Based on information and belief, Bowmar Media operates multiple social media channels for Mr. Bowmar and Bowmar Archery to include a YouTube channel (Bowmar Bowhunting), TikTok account (bowmarbowhunting) and Instagram accounts (bomarbowhunting, beast_broadheads and bowmar_archery) (collectively "Social Media"). Defendants utilized its Social Media to publicize the launch of the Beast broadhead. Since 2023, a majority of all postings and uploads in the Social Media, have concerned advertising for the Beast broadhead. Some videos directly address the "innovative" aspects of the Beast broadheads while other videos show Mr. Bowmar, his wife, and others using the Beast broadheads to hunt large game in the United States and abroad. The introduction of the infringing Beast broadhead has substantially increased the subscribers and viewers of the Social Media. The YouTube page for Bowmar Bowhunting had less than 1 million subscribers prior to August 2023 but has grown to over 2.5 million subscribers since the introduction of the Beast broadhead. Generally, all videos contain links to purchase Beast broadheads from Bowmar Archery's websites bowmarachery.com and beastbroadheads.com.

34. Plaintiffs became aware of the release of the Beast broadhead and Defendants' false statements concerning inventorship and other false advertising acts. However, Plaintiffs remained confident that a deal for the sale of the assets could be finalized and chose to take the high road as negotiations continued.

35. Throughout the first half of 2023 and during the negotiation to purchase Plaintiffs' assets, there was significant concern about Mr. Futtere's cancer and overall health. However, Mr. Futtere had another surgical procedure in late October 2023 and indicated he was largely pain free and feeling great. That positive news was relayed to Bowmar Archery.

36. On November 1, 2023, Bowmar Archery sent a new round of revisions for the asset purchase agreement. This version was a fundamental change from the June 14 oral agreement.

37. At no point during the negotiations did VIP Archery give Defendants permission, express or implied, to make, use, offer to sell, sell, and/or import into the United States, a product that embodied the ’177 Patent.

38. On November 17, 2023, Mr. Bowmar and Mr. Futtere held a telephone conversation regarding the negotiations. During this conversation, Mr. Bowmar admitted the Beast broadhead infringed claim 11 of the ’177 Patent. Mr. Bowmar also admitted that it would be cheaper for him to spend $250,000 on an *Inter Partes* Revies to invalidate the ’177 Patent versus entering the agreement with the Plaintiffs. Finally, Mr. Bowmar threatened Mr. Futtere by stating no one will buy the ’177 Patent while the IPR is ongoing.

39. Based on information and belief, Defendants had no interest in acquiring Plaintiffs’ assets or intellectual property.

40. On January 8, 2024 Bowmar Archery initiated an *Inter Partes* Review challenging the validity of the ’177 Patent in proceeding IPR2024-00401. Bowmar Archery asserted claims 1-4, 7, 9, 11, 12, 15, and 17 of the ’177 Patent were invalid citing five different grounds and numerous prior art references.

41. After Plaintiffs incurred significant expense rebutting Bowmar Archery’s invalidity claims, the Patent Trial and Appeal Board issued a Final Written Decision on June 30, 2025 upholding the validity of all challenged claims of the ’177 Patent.

42. During the pendency of the IPR proceeding, those in the archery community noticed the Beast broadhead copied aspects of VIP Archery’s intellectual property. Through public postings, Mr. Greg Poole indicated he was privy to the negotiations between Bowmar Archery and Plaintiffs and accused VIP Archery of “moving the goal posts” in the negotiations. Mr. Poole

indicated that he had seen the offers and counter offers and that he knew VIP Archery had "negligible sales." Based on information and belief, Mr. Bowmar violated the NDA by disclosing confidential information related to sales data of VIP Archery to Mr. Poole.

43. Mr. Futtere's health has continued to decline with him suffering from substantial pain. His physician care team has indicated multiple times in 2023 through the present, that he needs to reduce his stress to improve his health outcomes. Mr. Bowmar, knowing the health difficulties of Mr. Futtere, purposely chose to inflict emotional distress on him by seeking to decimate VIP Archery and Mr. Futtere personally by draining their finances to the point of no return. Mr. Bowmar's actions, to destroy a competitor and claim credit for Mr. Futtere's product innovations, created substantial emotional distress to Mr. Futtere that his health remains in poor condition due to the stress. Mr. Futtere will again undergo another surgery shortly after this complaint is filed. Mr. Bowmar knew of Mr. Futtere's health condition and chose to act in an egregious manner that negatively impacted Mr. Futtere's emotional and physical health.

44. Based on information and belief, Mr. Bowmar and Bowmar Archery never had an intent to purchase Plaintiffs' assets. Instead, Defendants were merely stringing Plaintiffs along to 1) discourage Plaintiffs from negotiating a sale of the assets to a third-party; 2) to "buy" time to release Bowmar Archery's new Beast broadhead that infringed the '177 Patent; 3) increase its social media presence and profit therefrom; and 4) put more financial strain on Plaintiffs by requiring them to incur more attorneys' fees in negotiating a sale that Defendants never intended to follow through with. Plaintiffs, thinking Defendants were negotiating in good faith, relied on the representations in good faith and did not engage third parties in negotiations nor did Plaintiffs incur expenses seeking to market or sell its broadheads. Plaintiffs relied on the Defendants' representations to their detriment.

45. Since at least August 2023, Defendants have been making, using, and selling the Beast broadhead which encompasses at least claims 1 and 11 of the ’177 Patent. Defendants sell the Beast broadhead direct to consumers through its own website, offers them from Amazon.com, and offers them in 400 stores in the United States and eight foreign dealers. Based on information and belief, all Beast broadheads are manufactured in the United States and shipped abroad.

46. Further, Defendants profit directly from YouTube, Instagram, and TikTok for the Social Media due to the number of views and subscribers. Through its infringement of the ’177 Patent, unfair competition, and fraud, Defendants have profited from its Social Media in addition to profiting from sales of the Beast broadhead.

**COUNT I**
**(Willful Infringement of the ’177 Patent against all Defendants)**

47. Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

48. The ’177 Patent is valid, enforceable, and owned by VIP Archery.

49. Defendants directly infringe the ’177 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, the Beast broadhead.

50. The Beast broadhead infringes at least claims 1 and 11 of the ’177 Patent, either literally or under the doctrine of equivalents.

51. The Beast broadhead includes a ferrule having a rearward end configured for attachment to an arrow shaft and an opposite forward end with a ferrule body extending therebetween. The Beast broadhead includes first and second blade members, each having a first end pivotally interconnected with the ferrule body and an opposite second end. Each blade member has a retracted position wherein the second end is spaced from the ferrule body at a first distance and an extended position wherein the second end is spaced from the ferrule body by a distance

which is greater than the first distance. The Beast broadhead includes at least one biasing member biasing the first and second blade members towards the extended positions.

52. In the Beast broadhead, the biasing member is the only element operable to hold the blade members in the extended position.

53. Defendants had knowledge of the ‘177 Patent prior to launch of the Beast broadhead. Despite this knowledge, Defendants proceeded to release the Beast broadhead product for sale and use the Beast broadhead to create content on Social Media for profit.

54. Mr. Bowmar specifically admitted that the Beast broadhead infringed claim 11 of the ’177 Patent during a phone call on November 17, 2023.

55. Defendants' conduct was deliberate and intentional, as evidenced by their admission of infringement while continuing to sell the infringing Beast broadhead.

56. Defendants’ infringement has damaged VIP Archery in an amount to be determined at trial. At a minimum, VIP Archery is entitled to a reasonable royalty from Defendants.

57. Defendants’ infringement is willful, entitling VIP Archery to enhanced damages under 35 U.S.C. § 284.

## COUNT II
## (Infringement of the’373 Registration under 15 U.S.C. § 1114)

58. Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

59. Arrowds, LLC owns Federal Trademark Registration No. 6,951,373 for FLEXCUT in Class 28 for hunting arrow points on the Principal Register. Arrowds licenses the ’373 Registration to VIP Archery for use and is specifically used in relation to the Ranger broadhead.

60. Defendants and VIP Archery are competitors, make similar products, utilize similar trade channels, and target similar consumers.

61. Defendants use in commerce a reproduction, counterfeit, copy, or colorable imitation of the FLEXCUT mark without the consent of Arrowds, LLC.

62. Defendants' marketing material for the Beast broadhead uses the term "flex" to refer to its bone evading technology. Defendants use the term audibly in marketing videos and in print on packing for the Beast broadhead.

63. Defendants' use of terminology confusingly similar to FLEXCUT is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' with Arrowds and its licensee, VIP Archery, or as to the origin, sponsorship, or approval of Defendants' Beast broadhead. Such use constitutes infringement of Plaintiff' registered FLEXCUT mark in violation of 15 U.S.C. § 1114.

64. Defendants knew of Arrowds' FLEXCUT mark and the '373 Registration when they adopted their confusingly similar terminology.

65. Defendants' trademark infringement has damaged Arrowds, LLC and VIP Archery in an amount to be determined at trial.

## COUNT III
## (False Advertising)

66. Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

67. Defendants have made false or misleading statements of fact in commercial advertisements about their Beast broadhead.

68. Specifically, Defendants falsely advertise that Joshua Bowmar "invented" the technology featured in the Beast broadhead, specifically advertises "our patented Bone Avoiding Technology lets the blades intelligently flex back ONLY on hard bone," that the bone avoiding

technology “isn't just evolution; it’s a revolution in broadhead design,” and claims only the Beast broadhead can get by rib bone without having to cut it or break it.

69. These statements are false as Mr. Bowmar did not invent the technology; Mr. Flanagan did as identified in the ’177 Patent. At the time Defendants made these statements, Defendants knew they were false, knew VIP Archery had already marketed products featuring “bone evading technology,” and knew VIP Archery used the trademark FLEXCUT to market its Ranger broadhead.

70. Defendants' false statements actually deceived or have the tendency to deceive a substantial segment of their audience.

71. The deception is material, in that it is likely to influence the purchasing decision of consumers.

72. Defendants caused their false statements to enter interstate commerce through their websites and Social Media.

73. Plaintiffs have been injured as a result of these false statements, including lost sales and damage to their reputation and goodwill.

## COUNT IV
## (Unfair Competition under 15 U.S.C. § 1125(a))

74. Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

75. Arrowds has a valid and enforceable trademark for FLEXCUT for broadheads.

76. Defendants have engaged in unfair competition under 15 U.S.C. § 1125(a)) by misappropriating the goodwill associated with the FLEXCUT mark and technology. Defendants’ use of terminology confusingly similar to FLEXCUT is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants’ with Arrowds

and its licensee, VIP Archery, or as to the origin, sponsorship, or approval of Defendants' Beast broadhead. Such use constitutes false designation of origin and unfair competition of Arrowds' FLEXCUT mark in violation of 15 U.S.C. § 1125(a).

77. Defendants have falsely represented that they invented the bone evading technology featured in the Beast broadhead when in fact this technology was invented by Mr. Flanagan and is embodied in the '177 Patent owned by VIP Archery.

78. Defendants' actions have created a likelihood of confusion among consumers as to the source of the technology.

79. Defendants' unfair competition has damaged Plaintiffs in an amount to be determined at trial.

**COUNT V**
**(Breach of Contract -NDA)**

80. . Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

81. Mr. Futtere and Defendants Joshua Bowmar and Bowmar Archery, LLC entered into a valid and enforceable Nondisclosure Agreement on March 4, 2023.

82. The NDA prohibited the disclosure of confidential information to third parties.

83. Confidential information included financial documents such as VIP Archery's sales data and debts as well as the specific dollars and royalty rates in the proposed business transaction.

84. Plaintiffs performed all obligations required of them under the NDA.

85. Based on information and belief, Defendants Joshua Bowmar and Bowmar Archery breached the NDA by disclosing confidential information, specially related to the sales data of VIP Archery and the financial aspects of the business negotiations to Mr. Greg Poole.

86. Mr. Poole indicated through public postings that he had seen the offers and counter offers and that he knew VIP Archery had "negligible sales."

87. As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages in an amount to be determined at trial.

**COUNT VI**
**(Fraud)**

88. Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

89. Defendants made material representations to Plaintiffs regarding their intent to purchase Plaintiffs' assets, including the '177 Patent and made those representations on phone calls directed into this Judicial District.

90. These representations were false when made, or alternatively, became false during the negotiations.

91. Defendants knew these representations were false when made or made them recklessly without knowledge of their truth.

92. Defendants made these representations with the intent that Plaintiffs would act and rely upon them.

93. Specifically, Defendants intended for Plaintiffs to continue negotiations with Defendants and refrain from negotiating with third parties or incurring expenses to market VIP Archery's products.

94. Plaintiffs acted in reliance on these representations by continuing to negotiate with Defendants and not engaging third parties in negotiations nor incurring expenses to actively market or sell its broadheads.

95. Plaintiffs suffered injury as a result of their reliance on Defendants' false representations, including lost business opportunities and financial strain. For example, Defendants released its Beast broadhead, that directly competes with VIP Archery's Ranger broadhead while the negotiations were ongoing, for the purposes of driving down the opportunity for the Ranger broadhead.

**COUNT VII**
**(Intentional Infliction of Emotional Distress)**

96. Plaintiffs reinstate and incorporate by reference the allegations set forth in all preceding and foregoing paragraphs as if set forth fully herein.

97. Defendant Joshua Bowmar engaged in extreme and outrageous conduct.

98. Mr. Bowmar was aware of Mr. Futtere's cancer diagnosis, his deteriorating health, and the financial difficulties VIP Archery was facing.

99. Despite this knowledge, Mr. Bowmar engaged in a scheme to string Plaintiffs along in negotiations while simultaneously developing and releasing the Beast broadhead that infringes the '177 Patent.

100. Mr. Bowmar filed an *Inter Partes* Review challenging the validity of the '177 Patent after admitting that his product infringed it.

101. Mr. Bowmar threatened Mr. Futtere by stating that no one would buy the '177 Patent while the IPR was ongoing.

102. Mr. Bowmar purposely chose to inflict emotional distress on Mr. Futtere by seeking to decimate VIP Archery and Mr. Futtere personally by draining their finances.

103. Mr. Bowmar's conduct was intentional or reckless.

104. Mr. Futtere suffered severe emotional distress as a result of Mr. Bowmar's conduct.

105. Mr. Futtere’s physician care team indicated multiple times during the pendency of the *Inter Partes* Review that he needs to reduce his stress to improve his health outcomes and that his stress levels were too high.

106. Mr. Bowmar's actions have negatively impacted Mr. Futtere’s emotional and physical health.

**DEMAND FOR JURY TRIAL**

107. Plaintiffs hereby demand a jury for all issues so triable.

**ATTORNEYS’ FEES**

108. As a result of the Defendants’ conduct, Plaintiff was required to retain legal counsel and now seeks its reasonable and necessary legal fees and expenses pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

**DEMAND FOR JURY**

109. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests a trial by jury of all issues of fact in this case.

**PRAYER FOR RELIEF**

WHEREFORE, VIP prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendants have directly infringed one or more claims of the ’177 Patent;

b. Entry of judgment declaring that Defendants have infringed the ’373 Registration;

c. Entry of judgment declaring Defendants have engaged in false advertising;

d. Entry of judgment declaring that Defendants have engaged in unfair competition;

e. Entry of judgment declaring Defendants Joshua Bowmar and Bowmar Archery, LLC have breached the Nondisclosure Agreement;

f. Entry of judgment declaring that Defendants have committed fraud;

g. Entry of judgment declaring Defendant Joshua Bowmar has committed intentional infliction of emotional distress;

h. An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the ’177 Patent;

i. An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the FLEXCUT trademark;

j. An order awarding damages sufficient to compensate VIP Archery for Defendants’ infringement of the ’177 Patent, but in no event less than a reasonable royalty, together with interest and costs;

k. Entry of judgment declaring that this case is exceptional and awarding Plaintiffs its costs and reasonable attorney fees under 35 U.S.C. § 285;

l. An award of Defendants’ profits derived from their trademark infringement, false advertising, and unfair competition;

m. An award of damages for Defendants’ breach of the Nondisclosure Agreement;

n. An award of damages for Defendants’ fraud;

o. An award of damages for Defendant Joshua Bowmar’s intentional infliction of emotional distress;

p. An award of punitive damages;

q. An award of Plaintiffs' reasonable attorneys' fees and costs incurred in this action; and

r. Such other relief as the Court deems just and proper.

Respectfully Submitted,

By: /s/ Jason E. McKinnie

**McKinnie & Paul, PLLC**
13333 Blanco Rd., Suite 204
San Antonio, Texas 78216
Telephone: 210-247-2220
JASON E. MCKINNIE
State Bar No. 24070247
Email: jmckinnie@mckinniepaul.com

MICHAEL D. PAUL
State Bar No. 24051171
Email: mpaul@mckinniepaul.com

**ATTORNEYS FOR PLAINTIFF**