IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VETERAN INNOVATIVE PRODUCTS, LLC, d/b/a VIP ARCHERY, ARROWDS, LLC, and MATTHEW FUTTERE, *Plaintiffs*, | § § § § § | No. 5:25-cv-01089-DAE |
| v. | § § § | |
| BOWMAR ARCHERY, LLC, BOWMAR MEDIA, LLC, JOSHUA BOWMAR, and DAVID HOUSER, *Defendants*. | § § § § § § | |

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed on November 5, 2025 (Dkt. # 10), by Defendants Bowmar Archery, LLC, Bowmar Media, LLC, Joshua Bowmar, and David Houser ("Defendants" or collectively, "Bowmar") seeking dismissal of Plaintiffs Veteran Innovative Products, LLC ("VIP Archery"), Arrowds LLC, and Matthew Futtere's ("Plaintiffs") First Amended Complaint (Dkt. # 9). Plaintiffs timely responded on December 5, 2025 (Dkt. # 14), and Defendant replied on June 12, 2025 (Dkt. # 15.). The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the filings and the relevant law, the Court **GRANTS IN PART** Defendants' Motion to Dismiss (Dkt. # 10).

BACKGROUND

This case arises from a dispute that arose in connection with Defendants' negotiations to purchase all or some of the assets of Plaintiff VIP Archery, including VIP Archery's U.S. Patent No. 8,043,177 ("the '177 Patent"). (Dkt. # 9 at 4, 7–8.) The following facts are as alleged in Plaintiffs' First Amended Complaint and are taken as true for the purposes of deciding the Motion to Dismiss. (Dkt. # 9.)

Plaintiffs include VIP Archery and Arrowds, LLC ("Arrowds"), both limited liability companies that are managed and solely owned by fellow Plaintiff and Texas resident, Matthew Futtere. (Id. at 2.) Both LLCs have their principal place of business in Fredericksburg, Texas, where Futtere resides. (Id.) VIP Archery is incorporated in Georgia, and Arrowds is incorporated in Texas. (Id.) Futtere has been named as an inventor "on at least nine issued U.S. patents related to bowhunting," and VIP Archery "offers numerous archery products including several different broadheads embodying Futtere's patents." (Id. at 4.)

The Patent-in-Suit is the '177 Patent, issued by the United States Patent and Trademark Office on October 25, 2011, titled "Arrowhead Having Collapsible and Outwardly Biased Blades." (Id.; Dkt. # 1-2.) The technology

involves broadheads—arrowheads used in bow hunting—with retractable and extendable blade members that allow the arrowhead to bypass or more easily pass through bone. (Dkt. # 9 at 4–5.) As the arrow penetrates an animal, the individual blade member can collapse if it hits a bone, allowing the arrow to continue further into the flesh, and then "outwardly bias to increase the amount of flesh cut by the blade members after passing through the bone." (Id.) Plaintiffs provide the following diagrams contained within the '177 Patent:




(Id. at 5.)

The '177 Patent was invented by Edward Flanagan and later acquired in 2019 by VIP Archery. (Id. at 4–6.) Plaintiffs sell a broadhead called the "Ranger broadhead" that embodies this Patent. (Id.) In its advertisements for the Ranger broadhead, VIP Archery describes the technology as its "FLEXCUT"

technology. (Id. at 6.) Arrowds has trademarked this term and "owns Federal Trademark Reg. No. 6,951,373 [("the '373 Registration")] for 'FLEXCUT' in Class 28 for hunting arrow points." (Id.)

In April of 2022, Defendant Bowmar Archery filed a separate suit for patent infringement in this District against VIP Archery, alleging that three of VIP Archery's broadheads, including the Ranger, infringed their Patent No. 10,295,316 ("Wukie Patent"). (Id. at 7.) In that case—which was assigned to Judge Robert Pitman—the court dismissed Bowmar's complaint with leave to amend, and shortly after, Bowmar stipulated to dismissal of its claims with prejudice in April of 2023. (Id.) In the spring of 2023, Bowmar and VIP Archery initiated negotiations for Bowmar to potentially acquire all or part of VIP Archery, including the '177 Patent. (Id.) The parties entered into a nondisclosure agreement between Mr. Bowmar and VIP Archery while the negotiations were ongoing. (Id.) Plaintiffs then allege that in June of 2023, the parties reached "an oral agreement for a comprehensive asset purchase agreement." (Id. at 8.)

Before this asset purchase was finalized, Bowmar released a broadhead in August 2023 that they called the "Beast" that Plaintiffs allege infringed on their '177 Patent. (Id.) As advertised, the name of the broadhead is an acronym for "Bone Evading Advanced Spring Technology," describing the ability of its blades to retract upon hitting hard bone to bypass a rib bone. (Id. at

9–10.) A diagram of Defendants' Beast broadhead is included in Plaintiffs' complaint:



(Id. at 9.) Thereafter, Plaintiffs allege that although they were aware of the release of the Beast broadhead and its infringement upon their Patent, they continued negotiations for a sale of VIP Archery's assets but were dissatisfied with the next version of the purchase agreement which was sent in November of 2023. (Id. at 11.) Negotiations continued in a November 17, 2023, telephone conference between Mr. Futtere and Mr. Bowmar, during which Plaintiffs allege that Mr. Bowmar admitted that the Beast broadhead infringed claim 11 of the '177 Patent. (Id. at 12.)

In January of 2024, Bowmar Archery attempted to invalidate the '177 Patent by initiating an *Inter Partes* review through the U.S. Patent and Trade Office. (Id.) However, the Patent Trial and Appeal Board issued its Final Written

Decision on June 30, 2025, upholding the validity of the challenged claims of the ’177 Patent. (Id.)

Throughout all the above-mentioned events, Plaintiff Futtere has been facing significant health issues stemming from his 2019 diagnosis with advanced bladder cancer. (Id. at 6.) He says that while he was undergoing treatment and surgeries for his condition, “VIP Archery suffered financial setbacks due to mismanagement by Mr. Futtere’s former business partners.” (Id.) Plaintiffs allege that Defendants were aware of Futtere’s deteriorating health and the financial difficulties of VIP Archery from the beginning of their negotiations. (Id. at 8.)

Plaintiffs filed the instant suit against Defendants in this District on September 2, 2025, later amending their Complaint on November 3, 2025. (Dkt. ## 1, 9.) They bring claims for (1) Patent Infringement of the ’177 Patent under 35 U.S.C. § 271; (2) Trademark Infringement of the ’373 Registration under the Lanham Act, 15 U.S.C. § 1114; (3) False Advertising; (4) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a); (5) Breach of Contract related to the parties’ nondisclosure agreement; (6) Fraud; and (7) Intentional Infliction of Emotional Distress. (Dkt. # 9.) These claims are brought against Defendants Bowmar Archery, LLC and Bowmar Media LLC—both limited liability companies incorporated in Iowa with their principal place of business in the same—Joshua Bowmar, an Iowa resident and the owner and CEO of Bowmar Archery and

Bowmar Media, and David Houser, a Pennsylvania resident and owner and manager of Bowmar Archery, LLC. (Id. at 2–3.)

Defendants thereafter filed their Motion to Dismiss on November 5, 2025, seeking dismissal of the entire action for improper venue and pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. # 10.) The matter is fully briefed and ripe for resolution.

## LEGAL STANDARD

### I. Motion to Dismiss under Rule 12(b)(3)

A party moving to dismiss based on improper venue does so pursuant to Federal Rule of Civil Procedure 12(b)(3). "In an action not based on diversity, proper venue lies in either '(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.'" McClintock v. Sch. Bd. E. Feliciana Par., 299 Fed. Appx. 363, 365 (5th Cir. 2008) (citing 28 U.S.C. § 1391(b)).

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." Braspetro Oil Servs. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record

beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. See 28 U.S.C. § 1406(a).

II. Motion to Dismiss under Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well–pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678

(internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

## DISCUSSION

### I. Improper Venue

At the outset of its motion, Defendants seek to dismiss Plaintiffs' patent infringement claim for improper venue pursuant to 28 U.S.C. § 1400(b). (Dkt. # 10 at 3–5.) Although they purport to bring their motion under Federal Rule of Civil Procedure 12(b)(6), the Court considers this portion of their motion as a Rule 12(b)(3) motion to dismiss for improper venue on account of Defendants'

reliance on § 1400(b) and 28 U.S.C. § 1406(a). See Caldwell v. Palmetto St. Sav. Bank of S. Carolina, 811 F.2d 916, 919 (5th Cir. 1987).

Defendants argue that venue is improper in the Western District of Texas under the exclusive venue statute for patent infringement, 28 U.S.C. § 1400(b). (Dkt. # 10 at 11.) Under § 1400(b), "[a]ny civil action for patent infringement may be brought in a judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For the purposes of patent venue, "a domestic corporation 'resides' only in its State of incorporation." TC Heartland LLC v. Kraft Foods Group Brands LLC, 581 U.S. 258, 262 (2017). On determining whether a "regular and established place of business" exists in the district, courts must find that: there is (1) "a physical place in the district," (2) that is "a regular and established place of business," and (3) "[the regular and established place of business] must be the place of the defendant." In re Cray Inc.

Upon review of Plaintiffs' Amended Complaint, there are no allegations that indicate either prong of § 1400(b) is satisfied. None of the named Defendants reside in the Western District of Texas. Here, Defendants Bowmar Archery LLC and Bowmar Media LLC each reside in Iowa, their state of incorporation. See TC Heartland LLC, 518 U.S. at 262; (Dkt. # 9 at 2.) Individual Defendants Joshua Bowmar and David Houser are residents of Iowa and

Pennsylvania, respectively. (Dkt. # 9 at 2–3.) Moreover, none of the allegations in the Amended Complaint suggest that any Defendant has a "physical place" in this District. (See generally id.) Indeed, Plaintiffs' Amended Complaint does not rely on § 1400(b) at all for proper venue, rather alleging that venue is proper for their remaining claims pursuant to 28 U.S.C. § 1391(b)(2) and asserting that the Court has pendent venue over the patent claim. (Id. at 4.) Defendants do not contest that venue is proper for Plaintiffs' remaining claims, instead arguing that Plaintiffs' patent claim should be dismissed because pendent venue does not apply to patent claims in the wake of the Supreme Court's decision in TC Heartland. (Dkt. # 10 at 13.)

The pendent venue doctrine parallels the concept of pendent jurisdiction. Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp.2d 449, 462 (S.D.N.Y. 2000). In 1984, the D.C. Circuit Court of Appeals wrote that this doctrine was "well-established, particularly in cases where the court has previously exercised its discretion to hear a certain claim under pendent jurisdiction." Beattie v. United States, 756 F.2d 91, 101 (D.C. Cir. 1984). Some courts apply pendent venue by analogizing the "principles of pendent jurisdiction . . . when one or more claims arising out of a common nucleus of operative facts do not satisfy the requirements of the applicable venue statute." Id. The frequently cited Hsin Ten case applied pendent venue to a patent infringement claim by utilizing an approach

which asks "which of the two federal claims is the 'primary' claim[] and appl[ies] the venue statute applicable to that claim." 138 F. Supp. 2d at 463 (quoting Garrel v. NYLCare Health Plans, Inc., No. 98 CIV. 9077(BSJ), 1999 WL 459925, at *5 (S.D.N.Y. June 29, 1999)). Although the Hsin Ten court noted that most of the courts to address the issue refused to exercise pendent venue over federal patent claims, it distinguished those decisions on the basis that they were cases in which a "plaintiff attempted to 'ferryboat in' the patent claim by joining less important federal claims or state law claims which were properly venued." 138 F. Supp. 2d at 463.

Defendants argue that Plaintiffs' reliance on the pendent venue doctrine is misplaced because recent Supreme Court precedent has rendered it largely obsolete in the federal patent context. In TC Heartland, the Supreme Court considered the question of "where proper venue lies for a patent infringement lawsuit brought against a domestic corporation." 581 U.S. at 262. Analyzing past precedent and Congressional amendments of both the patent venue statute, § 1400(b), and the general venue statute, § 1391(c), the Court concluded that the amendments to § 1391(c) did not modify § 1400(b) and thus held "that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." Id. Although TC Heartland did not squarely discuss pendent venue for patent claims, it made clear that the patent venue statute governs over patent

claims, and the § 1400(b) analysis takes priority over considerations from the general venue statute, § 1391. See 581 U.S. at 262. While applications of pendent venue before TC Heartland were sparse, since the ruling, the Court is unaware of *any* court that has applied the doctrine to assert proper venue over a federal patent claim. The Little Catholic, LLC et al. v. Specialized Top Advisory Servs. Inc., No. 8:24-cv-02577-FWS-JDE, 2025 WL 1140770, at *3 (C.D. Cal. Mar. 11, 2025) (quoting Globefill Inc. v. TJX Cos., Inc., No. CV 22-1639-CFC, 2023 WL 3496375, at *1 (D. Del. May 17, 2023) (collecting cases)).

In fact, multiple courts in this Circuit have rejected application of pendent venue to patent claims since TC Heartland. See, e.g., Wet Sounds, Inc. v. PowerBass USA, Inc., No. H-17-3258, 2018 WL 1811354, at *3 (S.D. Tex. Apr. 17, 2018) ("The patent venue statute is undeniably more strict now, post-TC Heartland, than it was in 2000, when the Hsin Ten court found pendent venue appropriate."); Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc., No. 6:20-cv-00606-ADA, 2021 WL 860006, at *2 (W.D. Tex. Mar. 8, 2021) ("[I]n accordance with TC Heartland, this Court holds that § 1400(b) is the sole and exclusive provision controlling venue in patent infringement cases; pendent venue does not apply in this case."); Quartz Auto Techs LLC v. Lyft, Inc., No. 1:20-cv-00719-ADA, 2021 WL 1177886, at *1 (W.D. Tex. Mar. 29, 2021) (dismissing patent infringement claims for lack of proper venue where one of five asserted patents

was improperly venued in the district). Plaintiffs acknowledge that the Fifth Circuit has never expressly applied the pendent venue doctrine, and although they contend that it has "acknowledged it as a legal concept," the two cases they cite in support do not involve patent claims and are thus inapposite to the instant situation. See Moler v. Wells, 18 F.4th 162, 165 n.5 (5th Cir. 2021) (merely mentioning pendent venue in a footnote to a Federal Tort Claims Act case); Merchs. Fast Motor Lines v. ICC, 5 F.3d 911, 921 (5th Cir. 1993) (declining to apply pendent venue in a case appealing several actions of the Interstate Commerce Commission where the at-issue claim did "not arise out of a common nucleus of facts with the other petitions before" it).

In light of the dearth of caselaw supporting Plaintiffs' position that the pendent venue doctrine should apply to these facts, particularly following TC Heartland, the Court declines to exercise its discretion to do so. Thus, Plaintiffs' patent infringement claim is improperly venued in this District. The only remaining question on this claim is whether it is most appropriate to transfer or dismiss these claims at this stage.

## II. Transfer

Although Defendants seek only dismissal of Plaintiffs' patent infringement claim, Plaintiffs request that should the Court decline to apply pendent venue, it instead "transfer the lawsuit to the Southern District of Iowa."

(Dkt. # 14 at 11 n.3 (emphasis added).) Pursuant to 28 U.S.C. § 1406(a), once a district court finds that venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Generally, the 'interest of justice' instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them." Chenevert v. Springer, Civil Action No. C-09-35, 2009 WL 2215115, at *4 (S.D. Tex. July 22, 2009) (internal quotations omitted). However, the issue of transfer is a matter of discretion. Seville v. Maersk Line, Ltd., 54 F.4th 890, 894 (5th Cir. 2022).

Here, where Plaintiffs themselves suggest in the alternative that transfer is appropriate, and where Defendant's reply did not indicate any opposition to this course of action, the Parties' representations weigh in favor of transfer. (Dkt. # 14 at 11 n.3; see Dkt. # 15.) Further, transfer is in the interest of justice where Plaintiffs' claims are interconnected, as demonstrated by the facts alleged in their Amended Complaint and in their briefing.[1] The patent infringement claim need not be litigated in an entirely separate suit where the trademark infringement, false advertising, breach of contract, fraud, and intentional infliction of emotional distress all bear on issues arising from the same set of

[1] Although Plaintiff briefed this issue in advancing their theory of pendent venue, the Court finds the same arguments relevant to this inquiry.

circumstances. Requiring Plaintiffs to bring a separate, largely duplicative suit in another venue and maintain two suits against the same defendants in different districts does not serve the interest of justice, particularly in light of Mr. Futtere's health concerns. Accordingly, the Court finds this case in its entirety should be transferred to the Southern District of Iowa.

CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** Defendant's Motion to Dismiss (Dkt. # 10) for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1400(b), but finds that it is proper to transfer the case to the Southern District of Iowa in lieu of dismissing Plaintiffs' claims in the interest of justice. Accordingly, the Court **ORDERS** that this case be **TRANSFERRED** to the Southern District of Iowa, Central Division. The Clerk of Court is **DIRECTED** to hold the transfer for five business days from the date of this Order.

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, August 11, 2026.

David A. Ezra
Sr. United States District Judge